IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MARLANA CASE,

                  Plaintiff,                            OPINION AND ORDER

v.

                                                         17-cv-619-wmc

ANDREW SAUL,
Commissioner of Social Security,

                  Defendant.

       Plaintiff Marlana Case seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security denying her application for disability, disability insurance benefits and supplemental income.  Specifically, Case seeks remand on two grounds:  (1) the ALJ failed to evaluate the side effects of her prescribed medications on her ability to work; and (2) the ALJ failed to incorporate his findings of "moderate limitations in her abilities to maintain concentration, persistence and pace" in questioning the vocational expert.[1]  For the reasons explained below, the Commissioner's decision will be affirmed.

BACKGROUND

       Case filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income on February 21, 2015, alleging a disability onset date of September 21, 2014.  (AR 13.)  Her claims were denied on August 12, 2015 and then again on reconsideration on February 19, 2016.  (Id.)  On February 9, 2017, Case

---

[1] Although the plaintiff filed her reply brief on January 29, 2018, nearly a month beyond its deadline, the court will construe its filing as a motion for leave to file, which is granted.

appeared with her counsel at a video hearing before ALJ William Shenkenberg, during which both she and a vocation expert ("VE") testified. (*Id.*) On March 1, 2017, the ALJ issued an unfavorable decision, concluding that Case was not disabled. (AR 23.)

Initially, the ALJ concluded that Case had five severe impairments that "significantly limit[ed her] ability to perform basic work activities": lumbar spine degenerative disc disease, cervical spine degenerative disc disease, depression, obesity and anxiety. (AR 15-16.) He also found that she had moderate limitations in: (1) "understanding, remembering, or applying information"; (2) "interacting with others"; (3) "concentrating, persisting, or maintaining pace"; and (4) "adapting or managing oneself." (AR 16-17.) However, the ALJ found that because Case lacked at least two "marked" limitations or one "extreme" limitation, she did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 16-17.)

In assessing her residual functional capacity ("RFC"), the ALJ concluded that Case could perform light work, but that she could only: "perform frequent overhead reaching with the bilateral upper extremities"; "understand, remember, and carry out simple instructions and perform simple routine tasks"; perform "low stress jobs with only occasional changes in work setting"; and have "occasional interaction with the public, co-workers, or supervisors." (AR 18.) The ALJ further noted this RFC "reflect[ed] the degree of limitation" that he "found in the 'paragraph B' mental functional analysis," and Case's testimony that "her medi[c]ation regimen causes fatigue and dizziness, which results in her taking rest, breaks every 30 minutes to an hour," after discounting for the fact that her

2

testimony was "not entirely consistent with the medical evidence and other evidence in the record." (AR 18-19.)

Finally, although the ALJ determined that Case was unable to perform her past relevant work as a waitress, fast food worker, or teacher's aide, he found that there was work in the national economy she could perform based on the vocational expert's testimony that even with her RFC, Case "would be able to perform the requirements of representative occupations such as office helper . . ., food prep . . ., [and] kitchen helper[.]" (AR 21-23.) Accordingly, the ALJ determined that claimant was not disabled. (AR 23.)

OPINION

On appeal, this court reviews an ALJ's decision and reverses a "determination only where it is not supported by substantial evidence." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). Likewise, the court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Ultimately, however, the court must ensure that the ALJ created an "accurate and logical bridge" between the evidence and the conclusion that the claimant is not disabled. *Id.* (citing *Lopez*, 336 F.3d at 539). Here, because the ALJ's decision is supported by substantial evidence, the court will affirm.

3

I.  **Medication Side Effects**

First, plaintiff faults the ALJ for "never discuss[ing] the issue of whether Case's many prescribed medications caused negative side effects." (Pltf. Br. Support (dkt. #9) 67.) During the video hearing, Case specifically testified that she took medications for "[c]holesterol, blood pressure, diabeties," "three mental health drugs," and "high doses of Tylenol and Ibuprofen for the pain." (AR 58.) As she further explained, the combination of these drugs caused "[t]iredness," as well as "[s]ometimes, dizziness" or "just feeling real in the middle[:] Not a low; not a high." (AR 58-59.) Because the drugs made her tired, Case reported also taking breaks approximately every "half hour to an hour," depending on what she was doing. (AR 59-60.)

Plaintiff contends that because side effects of her medications were not expressly addressed in the ALJ's decision, it is "difficult to assess whether those side effects change[d] the ALJ's assessment as to Case's overall physical capacity." (Pltf. Br. Support (dkt. #9) 70.) In response, the government contends that the ALJ appropriately evaluated claimant's symptoms, substantial evidence supported his findings, and the ALJ's conclusion that the record provided "no evidence of significant complaints of medication side effects" was correct. (Deft. Br. Opp'n (dkt. #11) 4-5 (quoting AR 19).)

This claimed flaw in the ALJ's written decision simply does not warrant a remand. First, the ALJ expressly recognized Case's testimony that her medication "regimen causes fatigue and dizziness, which results in her taking rest breaks every 30 minutes to an hour," but also recognized that "[t]here is no [medical] evidence of significant complaints of medication side effects," including no medical notes of Case's complaining of significant,

4

long-term effects. (AR 19.) To the contrary, the record is replete with medical notes of Case *denying* any medication side effects. (*See* AR 603 (denying "any side effects" from metformin and simvastatin); AR 609 (denying side effects from metformin and Lisinopril); AR 867 (denying side effects for hypertension, hyperlipidemia, and insomnia medications); AR 1110 ("No side effects or adverse reactions noted or reported."); AR 1112 (same).[2] Second, on claimant's adult function reports and Forms SSA-3341, she repeatedly indicated that her medications had no side effects. (*See* AR 442, 456, 468, 478.) Third, and finally, the only record evidence devoted to material, long-term side effects from Case's drug use appear to be printouts from "drugs.com," detailing *possible* side effects for various medications. (*See* AR 505-550.)

Accordingly, the ALJ provided a more than adequate written explanation for his having discounted medication side effects that Case largely discounted herself. Regardless, the ALJ's decision amply accommodated in Case's ability to function with her medications by adopting language in the RFC taken directly from the medical opinion evidence, as discussed below.

## II. RFC Formulation Presented to the Vocational Expert

Plaintiff's second argument is that the ALJ neglected to include his finding that Case was "moderately limited in concentration, persistence and pace" into his formulation of her RFC in questioning the vocational expert, making the ALJ's conclusion that she was

---

[2] In fairness, there is one notation that after Case started "Effexor two weeks ago, she states she had a few side effects at first but is going away. Some constipation. But not 'crying as much.'" (AR 725.) Even then, these side effects do not seem to continue, or at minimum, there is no subsequent medical note of Case complaining about longer-term side effects from her use of Effexor.

5

not disabled unsupported by substantial evidence. (Pltf. Br. Support (dkt. #9) 64-67.) In particular, plaintiff argues that the ALJ's limiting Case to "routine, repetitive tasks with low stress setting that is defined as no fast pace work, such as a high speed production" to account for her limitations in concentration, persistence and pace ("CPP") violates settled law first set forth by the Seventh Circuit in *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010). (*Id.* at 67.) Were that an accurate summary of the ALJ's actions, the court would be inclined to agree. *See, e.g., Winsted v. Berryhill*, 923 F.3d 472, 476-77 (7th Cir. 2019) (citing *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)). However, because the ALJ adopted the same language of the medical providers to account for Case's CPP limitations, the court agrees with defendant that this case is unlike *O'Connor-Spinner* and its progeny.

As an initial matter, the ALJ need not use "magic words" or even use the specific terms "concentration, persistence, and pace" in the ultimate RFC or VE hypothetical, so long as adequate, alternative phrasing is employed that accounts for the plaintiff's job-related limitations. *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *O'Connor-Spinner*, 627 F.3d at 619. What the ALJ cannot do is *assume* that a mere restriction to unskilled work is enough to account for moderate CPP limitations. *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020). Instead, the ALJ must "build an accurate and logical bridge" from the evidence about the plaintiff's mental limitations to the conclusion about the types of work the plaintiff can perform. *See Martin*, 950 F.3d at 374 (affirming decision of ALJ who "did not take any of the shortcuts on [plaintiff's] CPP limitations that we have found problematic in other cases."); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Where

the RFC is tailored to "account for the claimant's demonstrated psychological symptoms," it will generally be upheld. *See, e.g., Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (ALJ adequately accommodated claimant's social anxiety with RFC for simple, routine, repetitive tasks requiring no more than occasional contact with supervisors and coworkers, no contact with public, and an assigned work area at least 10-15 feet away from coworkers).

In this case, the ALJ simply did *not* commit the familiar error of assuming that a limitation to "unskilled work" was sufficient to account for plaintiff's moderate CPP limitations. Instead, as part of the RFC, the ALJ relied principally on the findings of consultative psychologist Gregory Cowan, Ph.D., in concluding that Case could "understand, remember, and carry out simple instructions and perform simple routine tasks," perform "only low stress jobs with only occasional changes in work setting; and is limited to occasional interaction with the public, co-workers, or supervisors." (AR 18-21.) The RFC was also supported by the ALJ's finding that Case's "longitudinal symptoms of tearfulness, depression, and anxiety would likely cause moderate limitations in her ability to withstand workplace stress and change." (AR 20; *see also* AR 21 (concluding that "claimant's symptoms of tearfulness, depression, and anxiety justify findings of moderate functional limitations in all areas").)

At the same time, the ALJ determined that Case had "moderate limitation" in: (1) "understanding, remembering, or applying information," (2) "interacting with others," (3) "concentrating, persisting, or maintaining pace," and (4) "adapting or managing oneself." (AR 16-17.) This led the ALJ to find that the "paragraph B" criteria were not met, since Case did not have either one "extreme" limitation or two "marked" limitations.

7

(AR 17.) Instead, the ALJ explained that the RFC "reflect[ed] the degree of limitation" he "found in the 'paragraph B' mental functional analysis." (AR 18.) Accordingly, the ALJ did not need to incorporate separately each moderate limitation into the RFC.[3] *See* Social Security Ruling, SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 128, 34474, 34477 (July 2, 1996) ("[T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."); *see also* Program Operations Manual System, DI 24510.065 Section III of SSA-4734-F4-SUP -- Functional Capacity Assessment, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510065 (advising that the psychological or medical consultant's narrative statement should "[i]nclude no severity ratings or nonspecific qualifying terms (e.g., moderate, moderately severe) to describe limitations. Such terms do not describe function and do not usually convey the extent of capacity limitation.").

    Regardless, in questioning the vocational expert, the ALJ *did* incorporate limitations in persistence, concentration and pace in the hypotheticals posed to the VE. (*See* AR 85-86.) Indeed, even plaintiff concedes in her reply brief that Dr. Cowan had found Case "demonstrated good concentration" in performing serial testing and concluded that she had the ability "to withstand routine work stressors and adapt to workplace changes,"

---

[3] While 20 C.F.R. § 404.1520a explains that a mental impairment rated as "none" or "mild" is generally considered "non severe" and that extreme "represents a degree of limitation that is incompatible with the ability to do any gainful activity," it is silent on the meaning of a "moderate" limitation. *See* 20 C.F.R. § 404.1520a(c)(4), (d)(1).

though "moderately impaired." (Pltf Br. Reply (dkt. #12) 2.) In fairness, plaintiff still insists in reply that the "RFC does not articulate limitations due to pace and persistence as pointed out in *O'Conner*." (*Id*.) Or, as plaintiff put it, "perhaps [Case] can concentrate but cannot do a job with the necessary pace and/or extended periods of time." However, this argument is belied by the ALJ's decision and, more importantly, the finding of agency psychologist, Russell Philipps, Ph.D., upon which the ALJ expressly relied in his formulation of the RFC. (AR 21). Specifically, Dr. Philipps opined that Case "can maintain attention for two hours at a time and persist at simple tasks over eight and 40 hour periods with normal supervision." (AR 210.)

While plaintiff appears to suggest that some ambiguity remains in Drs. Cummings' and Philipps' findings as to whether a particular pace may be a problem for Case, an ALJ need not "use a particular term when setting forth the plaintiff's residual functional capacity," so long as "language he uses . . . reflect[s] all of the limitations that the plaintiff has." *Coleman v. Colvin*, No. 13-CV-216-BBC, 2014 WL 910334, at *5 (W.D. Wis. Mar. 10, 2014) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)). For example, in *Simila v. Astrue*, 573 F.3d 503 (7th Cir. 2009), a claimant's "moderate difficulties with concentration, persistence, and pace stemmed from his chronic pain syndrome and somatoform disorder." *Id.* at 522. The ALJ did not expressly mention a concentration, persistence, or pace limitation, but did limit the claimant to sedentary work and stated that "because of the allegations of pain, I would also further limit it to unskilled." *Id.* at 519. The Seventh Circuit upheld the ALJ's decision, finding that although the specific terms "concentration, persistence, or pace" were not mentioned in

9

the hypothetical, the claimant's actual limitations were included. *Id.* at 522.

Here, unlike the ALJ in *O'Conner*, the ALJ adopted express language from the reviewing psychologists, who confirmed Case's ability to understand, remember, and carry out simple instructions and perform simple routine tasks," perform "only low stress jobs with only occasional changes in work setting," with limited to occasional interaction with the public, co-workers, or supervisors," over the course of an ordinary workday and workweek with normal supervision, despite having moderate limitations in CPP. This is enough guidance for the VE to render an accurate opinion as to the jobs available in the national economy. Accordingly, there was no reversible error in how the ALJ formulated Case's RFC or questioned the vocational expert at her evidentiary hearing.

## ORDER

IT IS ORDERED that the decision of defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, denying Marlana Case's application for disability benefits and supplemental security income is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 28th day of May, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge